```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEVIN BOONE, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | Civil No. 09-0277 (JBS)<br>Criminal No. 00-0003 (JBS) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Respondent. | |

APPEARANCES:

Mark W. Catanzaro
Blason IV - Suite 208
513 S. Lenola Road
Moorestown, New Jersey 08057
     Attorney for Petitioner

Paul J. Fishman
United States Attorney
     By: Kevin Timothy Smith
         Assistant U.S. Attorney
Camden Federal Building and
United States Courthouse
P.O. Box 2098
Camden, New Jersey 08101
     Attorney for Respondent

**SIMANDLE**, District Judge:

I.  INTRODUCTION

     This matter comes before the Court upon Respondent United States of America's motion to dismiss Petitioner Kevin Boone's section 2255 habeas petition as untimely.[1]  [Docket Item 4.]  The

---

[1] On January 3, 2011, Respondent withdrew its motion to dismiss on timeliness grounds in light of the contents of the

issue before the Court is a narrow question of fact: whether Petitioner handed his habeas petition to a federal employee at either FCI Fort Dix or FCI Cumberland prior to January 8, 2009, as he claims he did, or whether he instead did not mail his petition until shortly before January 16, 2009, but after January 8, 2009, as respondent, the United States, asserts.  To decide this question of fact, the Court held an evidentiary hearing on the issue on November 12, 2010, for which Petitioner was appointed counsel, where the Court heard testimony from the Petitioner as well as a second witness supporting Petitioner's claim.  After the hearing, Plaintiff offered the declaration of Lieutenant Michael Bridges of the Federal Bureau of Prisons.  In light of this evidence, and in the absence of sufficient contradictory evidence by Respondent to meet its burden of proving the affirmative defense of untimeliness, the Court concludes that Petitioner's section 2255 habeas petition was timely filed.

## II.	BACKGROUND AND PROCEDURAL HISTORY

Petitioner was originally sentenced in this Court on

---

Declaration of Bureau of Prisons Lieutenant Bridges.  [Docket Item 44.]  The Court feels, however, that the declaration, while illuminating, does not settle the matter.  Thus, the Court will exercise its authority to consider the issue of timeliness of a § 2255 habeas petition sua sponte.  United States v. Bendolph, 409 F.3d 155, 164 (3d Cir. 2005).

February 20, 2003, on one count of distribution of 62.4 grams of powder cocaine to a term of 225 months imprisonment and 3 years supervised release.  [Cr. Docket Item 269.]  The Third Circuit affirmed the conviction but vacated the sentence and remanded for re-sentencing under United States v. Booker, 543 U.S. 220 (2005).  [Cr. Docket Item 286.]  The Petitioner was thereafter re-sentenced in this Court on January 3, 2007 to a term of 180 months imprisonment and 3 years supervised release.  [Cr. Docket Item 293.]  Petitioner unsuccessfully appealed the re-sentence; certiorari was denied by the United States Supreme Court on January 7, 2008.  Boone v. United States, 552 U.S. 1124 (2008).

According to Petitioner's testimony and the certificate of process attached to the petition, Petitioner initially attempted to file his habeas petition in March of 2008 from the FCI Fort Dix Special Housing Unit ("SHU").[2]  Several months later, after he was transferred to FCI Cumberland, he claims to have discovered that his petition was not sent to the Court as requested.  Bureau of Prisons records demonstrate (and Petitioner does not contest) that this discovery took place no later than

---

[2] In Petitioner's certificate of service, he claims that he handed the petition to a federal employee from the Fort Dix SHU on March 3, 2008.  (Pet. at 27-28.)  In his November 12, 2010 testimony, confronted with Respondent's evidence that he was not sent to the SHU until March 30, 2008, he revised this claim, explaining that the actual date he tried to send it was March 30, and that his prior insistence on March 3 was due to a typographical error made during the preparation of his petition.

October 8, 2008. (Resp't Submission of Oct. 28, 2010 at 2 and Ex. A.) Petitioner testified that he subsequently tried to send the petition again to the Court on December 18, 2008, by handing it to an unidentified federal employee at the mail room at FCI Cumberland. The petition's envelope bears a postmark from FCI Cumberland of January 16, 2009. The petition was received by the District Court Clerk's Office on January 21, 2009. [Docket Item 1.] Petitioner claims that, because he handed the petition to a federal employee at FCI Cumberland prior to the one-year deadline, the petition was timely filed under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266 (1988).

## III. DISCUSSION

Respondent contends that the petition was untimely under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a one-year time limit on 2255 habeas petitions. 28 U.S.C. § 2255(f); Kapral v. United States, 166 F.3d 565, 569 (3d Cir. 1999) ("Thus, § 2255's limitation period begins to run on the date on which the defendant's conviction and sentence become 'final.'"). Both parties now agree that the AEDPA time limit expired on January 8, 2009, one year after his direct appeal was denied certiorari.[3] Petitioner claims that his petition was

---

[3] The Government originally maintained that the one-year time limit for habeas relief began to run on June 25, 2007, pointing to the certiorari denial on Petitioner's appeal from his

4

timely because he handed it to a prison official for mailing on December 18, 2008, under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266 (1988).  The Government disputed this account, arguing that Petitioner's testimony lacks credibility and claiming that the only objectively verifiable evidence of the date the petition was mailed, the postmark on the petition's envelope, should overcome Petitioner's testimony.  Neither side has produced an internal prison mail log recording when the Petitioner handed his envelope to a prison official.

**A.    Evidence in the Record**

1.    Petitioner's Evidence

Petitioner testified before the Court that he handed his 2255 habeas petition, addressed to this Court and bearing sufficient postage, to federal employees on two separate occasions in 2008, first in March at FCI Fort Dix and, nine months later, in December at FCI Cumberland.  He explained that, at the time he delivered his petition to these two employees, neither were known to him and did not identify themselves to him. However, he testified that he has subsequently learned the identity of the Fort Dix employee who took his petition but

---

original sentence.  (Mot. to Dismiss at 3.)  The Government has since abandoned this line of argument in the face of the Court's May 25, 2010 letter clarifying the Petitioner's appellate procedural history. [Docket Item 25.]

failed to mail it as requested, naming the individual as "Lieutenant Bridges" before the Court.[4]  Finally, Petitioner testified that, on December 18, 2008, he delivered the petition to a federal employee at the FCI Cumberland mail room at approximately 11:00 a.m. during a mail room "open house" at FCI Cumberland.  He explained that he was not given the opportunity to ask the name of the employee who took his mail from him because the facility required that prisoners move promptly through the line and depart immediately after turning in their mail, giving him no opportunity to ask for the names of the workers accepting the mail.

Petitioner also introduced the testimony of Ikeya Speed, his daughter, to corroborate his testimony.  Ms. Speed testified that in April of 2008, she received a letter from the Petitioner in

---

[4] Petitioner testified that he only recently learned the identity of Lt. Bridges when he coincidentally ran into him at FDC Philadelphia in the weeks prior to the evidentiary hearing. On November 25, 2010, Petitioner sent to the Court an unsigned "affidavit" purportedly from Lt. Bridges. [Docket Item 40.] On January 3, 2011, the Court received a signed declaration by Lt. Bridges attached to correspondence from Respondent. [Docket Item 44.] The Court notes that Petitioner is represented by counsel, but filed the unsigned "affidavit" pro se rather than contacting his court-appointed attorney on the matter. The Court will consider only those filings submitted by counsel of record. See United States v. D'Amario, 268 Fed. Appx. 179, 180 (3d Cir. 2008) (holding that District Court acts within its authority to issue limitations on party's pro se filings submitted while represented by counsel); United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006). Consequently, the Court will not take Petitioner's pro se "affidavit" into consideration, and will only consider the signed declaration of Lt. Bridges filed subsequently.

which he told her that he had recently mailed his 2255 petition to the Court.  Ms. Speed's letter from her father, dated April 9, 2008, was introduced into evidence, and states: "I already gave my 2255 Petition to an employee here in the SHU and I asked him to place it in the legal mail system here at Fort Dix."  (Pet'r Ex. 1.)

Finally, on January 3, 2011, the court received, attached to correspondence from the Respondent, a signed declaration from Lt. Bridges, the property officer at the Fort Dix Special Housing Unit (SHU), who Petitioner alleges accepted Petitioner's 2255 petition in March of 2008.  Lt. Bridges' declaration corroborates Petitioner's account in a few, but not all, areas.  Lt. Bridges declares that he accepted "paperwork" from Petitioner while Petitioner was in the SHU at Fort Dix, but declares that he cannot remember if Petitioner instructed him to mail the paperwork, or even informed him that it was legal paperwork. (Bridges Decl. ¶ 5.)  He also confirms that, rather than mail the paperwork, he instead placed it with Petitioner's personal property that was eventually transferred with Petitioner later in 2008.  (Id. ¶ 6.)  Finally, Lt. Bridges declares that Petitioner later inquired whether he had mailed the paperwork, and he informed the Petitioner that he had not. (Id. ¶ 7.)

        2.   Respondent's Evidence

Respondent has presented evidence that raises questions

about Petitioner's credibility.  Specifically, four sets of facts are relevant to the issue of credibility: (1) the Petitioner's claim in his certificate of service and in several subsequent filings with the Court that he was housed in the Fort Dix SHU on March 3, 2008 when the prison housing records demonstrate that he was not placed in the SHU until March 30, 2008; (2) the fact that Petitioner claims to have delayed re-sending his petition from FCI Cumberland for two months, despite the fact that, according to Petitioner's testimony, he discovered the completed petition at Cumberland beginning in early October, 2008, and according to Lt. Bridges, Petitioner learned his petition had not been mailed from the Fort Dix SHU no later than June of 2008; (3) the fact that the petition's envelope was not postmarked until January 16, 2009, twenty nine days after he claims to have delivered it to the FCI Cumberland mail room; and (4) the fact that many other items of mail sent by petitioner from FCI Cumberland were processed and sent much more quickly than he claims his petition was.

Respondent's first attack on Petitioner's credibility involves the issue of when Petitioner was placed in the SHU at Fort Dix.  Respondent produced records of FCI Fort Dix inmate housing quarters that it says demonstrates that Petitioner lied in his certificate of service.  These records show that from December 12, 2007 until March 30, 2008, Petitioner was assigned

to the "Q/Range" (identified by Respondent as the "general population") and not transferred to the "Z/Range" (identified by Respondent as the SHU) until March 30, 2008.  (Mot. Dismiss at 4 and Ex. 1.)  Thus, Respondent argues, Petitioner's account should not be believed when he claims to have handed over the petition on December 18 because he has lied about the date he first attempted to send his petition. [Docket Item 38 at 2.]

Respondent's second argument involves the date that Petitioner first learned that his petition was not mailed from Fort Dix as he claimed he intended.  Lt. Bridges declares that he informed Petitioner that it had not been mailed while Petitioner was still in the Fort Dix SHU, no later than June of 2008.  But even according to Petitioner's testimony, Respondent produced records demonstrating that by October 8, 2008, Petitioner had received all of his property at FCI Cumberland.  Petitioner testified on November 12, 2010, that he delayed re-sending the petition for two months because he wanted to modify it to include further legal research, but ultimately sent the original petition without making changes because he was concerned that the deadline for filing his petition was approaching.  Respondent claims that this explanation lacks credibility when compared against Petitioner's testimony regarding his efforts to mail the petition earlier from Fort Dix in March of 2008.  Respondent argues that the apparent inconsistency of Petitioner's narrative casts doubt

9

on the credibility of the Petitioner's story in general.

Respondent also argued, in its June 11, 2010, letter to the Court that the Petitioner's account of when he handed over his petition in December of 2008 at FCI Cumberland should be rejected because the envelope bears a postmark of January 16, 2009. This twenty nine day delay stands in sharp contrast to the regular length of time it took for his other outgoing mail to be processed at FCI Cumberland. Respondent looks at the dates of ten of Petitioner's letters sent to the Court from Cumberland, demonstrating that for the nine letters sent from Cumberland after his petition was filed, the document was never postmarked more than nine days after Petitioner claims to have handed it over to a prison employee for mailing, and the average delay was slightly over five days. (Resp't Submission of June 11, 2010, Ex. 2.) Yet the Petitioner claims that for the petition itself, the document languished for twenty nine days (three times the length of any other mailing) before being postmarked. This discrepancy, Respondent claims, should cast doubt on Petitioner's testimony that he attempted to mail the petition prior to the one-year deadline of January 8, 2009.

Finally, Respondent points to Petitioner's April 9, 2008, letter to Ikeya Speed as evidence of his lack of credibility. Respondent argues that the phrasing of the letter and the date Ms. Speed claims to have received it are too convenient to be

credible.  Respondent claims that it defies credulity that a father would write to his daughter from prison about the date he submitted his 2255 petition in such technical language.  Ms. Speed did not produce the envelope that contained the letter, which would have had a postmark, so there is a question about its authenticity.  Instead, Respondent suggests, the Court should conclude that the letter was fabricated after the fact to bolster Petitioner's claim that the petition was timely filed.

### B. Burden of Proof

The Respondent is the party asserting the affirmative defense of statute of limitations.  Consequently, it bears the burden of proof.  While the Third Circuit has not ruled specifically on the burden of proof in a contested prison mailbox rule case, the Circuit has characterized the AEDPA one-year time limit on habeas petitions as an affirmative defense rather than a jurisdictional requirement.  See Long v. Wilson, 393 F.3d 390, 401-03 (3d Cir. 2004) (characterizing the AEDPA one-year time limit in a section 2254 habeas petition as an affirmative defense); United States v. Bendolph, 409 F.3d 155, 166 (3d Cir. 2005) (applying the reasoning and holding of Long to Section 2255 habeas petitions).  In general, the defendant, or the party asserting the defense, bears the burden of proving an affirmative defense.  See, e.g., Richard B. Roush, Inc. Profit Sharing Plan

11

v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002) (defendant bears burden of proving statute of limitations defense); Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990) ("When the statute of limitations is raised as a defense, we have recognized that it is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant.") (internal quotation marks omitted).

The issue, therefore, is whether the Respondent's evidence highlighting implausibilities and inconsistencies in Petitioner's testimony is sufficient to meet its burden in the absence of any affirmative evidence proving that Petitioner could not have mailed the petition as early as January 8, 2009. Petitioner argues that the reasoning of the Supreme Court decision Houston v. Lack, 487 U.S. 266 (1988), counsels against such a result. Petitioner argues that Houston v. Lack was premised on the assumption that prison mail systems would maintain verifiable mail records. "The bright-line rule recognizing receipt by prison authorities as the moment of filing will also decrease disputes and uncertainty as to when a filing actually occurred, since such authorities keep detailed logs for recording the date and time at which they receive papers for mailing and can readily dispute a prisoner's contrary assertions." Id. at 267. Thus, Petitioner claims, Houston v. Lack demands that, rather than simply casting doubt on Petitioner's testimony, the Respondent

12

must provide affirmative evidence that the petition must have been mailed late in order to meet its burden.  Since no such logs exist for Cumberland, we are left to indirect proofs.

Petitioner's argument finds support in <u>Henderson v. Frank</u>, 155 F.3d 159 (3d Cir. 1998), where the court held that, in the absence of any documentary proof of the date a 2254 petition was filed, such as a mail log, the court would deem the petition filed as of the date written on the petition's certification page as the more plausible filing date.

> Thus, the Commonwealth should have been expected to support its untimeliness argument with prison logs documenting that Henderson deposited his Petition with prison authorities on April 24 or April 25, 1996.  Absent such proof to the contrary, we conclude that Henderson's Petition, having arrived in Pittsburgh on April 25, must have been first delivered to prison authorities some time before April 24, and therefore should be deemed filed before the AEDPA effective date.

<u>Id.</u> at 164.  <u>See also</u> <u>Caldwell v. Amend</u>, 30 F.3d 1199, 1203 (9th Cir. 1994) (holding that petitioner's testimony stating that petition was timely delivered to prison employees "shifts to the opposing party the burden of producing evidence in support of a contrary factual finding. In the absence of a log for the legal mailbox or equivalent testimony and with the disposal of the motion's date-stamped envelope, it is not evident from the record that Appellees met this burden.")

However, the facts of <u>Henderson</u> and <u>Caldwell</u> are more favorable to the petitioners in those cases than here.  The

Henderson petition bore a postmark of only one day after the AEDPA deadline, rendering it implausible that petitioner had turned over his petition late.  155 F.3d at 164.  In Caldwell, the government respondent could come forward with no evidence to cast doubt on the petitioner's testimony, including the postmarked envelope in which petitioner mailed the filing. 30 F.3d at 1203.  In the instant case, however, Respondent is able to point to the postmarked envelope, which shows a postmark of more than a week after the deadline to file the petition and nearly a full month after Petitioner claims to have submitted it.

In search of a more precise rule, the Court finds the reasoning of Colon v. Goord, Civ. No. 98-1302, slip op., 2009 WL 890554 (N.D.N.Y. March 30, 2009) to be persuasive.  In that case, the magistrate judge reasoned, in a report and recommendation adopted by the court, that when a pro se prisoner litigant alleges he signed and mailed a filing on a particular date, the filing is presumed to have been mailed on that date, but the presumption can be overcome by the defendant if the plaintiff's claim lacks all credibility or is internally inconsistent.  2009 WL 890554 at *5 n.1.  The pro se prisoner litigant in Colon, a Section 1983 plaintiff, claimed to have signed and mailed his complaint on July 28, 1998, but prison library records showed that the plaintiff had not received materials included in his complaint until at least July 30, 1998.  Thus, the magistrate

14

judge reasoned, the defendant had defeated plaintiff's presumption by pointing to more than mere doubts of plaintiff's credibility but was not required to specifically disprove plaintiff's allegation through a prison mail registry record.

Applying this scheme to the current case, the Court concludes that, while the issue is close, Respondent has not met its burden to rebut Petitioner's presumption by merely highlighting the many aspects of his testimony that strain credulity.  Petitioner has testified that he handed in his petition to prison officials on two occasions.  While the Court finds it questionable that the only time Petitioner's mail was so significantly delayed or returned undelivered was in the delivery of his petition itself, this is not enough to rebut Petitioner's presumption.  Petitioner has, further, provided the Court with explanations for why his March 2008 certification date was incorrect and why he delayed re-sending the petition from Cumberland.  While both of these explanations strain the Court's credulity, the Court finds that they could possibly be true and will therefore give Petitioner the slim benefit of a substantial doubt.  The Court also relies on the corroborating evidence of Petitioner's daughter's testimony that she received his letter in April of 2008.  While receptive to Respondent's argument that such a letter seems suspiciously timed and worded, the Court declines to reject the sworn testimony of a competent witness on

15

such doubts and finds the Declaration of Lt. Bridges to buttress the credibility of Ms. Speed that Plaintiff intended to mail his petition from the Fort Dix SHU in the Spring of 2008.

The record shows that delays in mailing of more than a few days were customary at FCI Cumberland. Of the other nine items Petitioner mailed to this Court from that location, none was postmarked the same day that he gave it to a prison official for mailing. Only one mailing was postmarked within two days of the date Petitioner claimed to have signed and mailed the document [Docket Item 8]. The others were all delayed longer periods: one mailing was postmarked within four days [Docket Item 18]; three were postmarked within five days [Docket Items 9, 11, & 15]; two were postmarked within six days [Docket Items 12 & 16]; one was postmarked seven days after it was signed [Docket Item 13]; and one was postmarked nine days after it was signed [Docket Item 14]. Against this backdrop, a delay of eight days (from the January 8, 2009, due date to the January 16, 2009 postmark date) is not implausible.

This factual finding comports most closely with the intent of the Supreme Court in Houston v. Lack. There, the Court anticipated a prison mail system which kept records of when prisoner legal mail was handed in for mailing, and based its "bright-line" rule on such an assumption. 487 U.S. at 267. As Petitioner persuasively argues, any pro se prison litigant would

be incapable of producing more evidence than his own testimony and corroborating evidence such as Petitioner has provided here in a prison system such as FCI Fort Dix or FCI Cumberland, where prison officials apparently make no record or give no receipt of the date mail is turned in for posting.  Thus, in the absence of such bright-line records, the Court interprets Houston v. Lack to require the party denying timely filing to come forward with the better proof.  In this case, that burden is not met by Respondent.

This Court acknowledges that it is difficult to accept the implausibilities of Mr. Boone's evidence.  His confirmatory letter to his daughter may be a contrivance, same as his certification of mailing attached to his petition which, though dated December 18, 2008, when the petition would have been timely by 21 days, nevertheless contains an elaborate story about the circumstances of his earlier mailing which would be irrelevant if his petition was truly mailed on December 18, 2008.  Moreover, Mr. Boone's certificate of mailing is not notarized, depriving it of one of the indicia of authenticity as to the date.  Mr. Boone's explanation for even two month's delay (from October to December, 2008) in mailing his petition, which was unchanged from his alleged March, 2008 petition, does not have a ring of truth. In other words, if Mr. Boone had the burden to show timeliness, he would not have done it.  But, as discussed above, he does not

17

have that burden.  The Respondent has the burden of proving untimely mailing under Houston v. Lack, which it also has failed to do.

## III. CONCLUSION

The Court has evaluated Petitioner's account of when he mailed his petition in light of the petition's postmark and Respondent's skepticism of Petitioner's testimony.  The Respondent had the burden of proving its affirmative defense, and failed to meet that burden in the present case.  The Court finds that Petitioner turned in his petition to a prison employee prior to the January 8, 2009 deadline.  Consequently, Respondent's motion to dismiss the petition as untimely is denied.

In its order of May 27, 2010, the Court denied Petitioner's request for further extensions of time to modify his petition for habeas relief in response to the Court's Miller Order of January 29, 2009. [Docket item 24.]  The Court stated that, should it be deemed timely filed, the Court would rule on the petition as originally filed.  Therefore, Respondent's answer or other response to the petition as originally filed will be due 60 days from the entry of this Opinion and accompanying Order.[5]

---

[5] The Court appointed counsel for Mr. Boone for the evidentiary hearing on the issue of timeliness only, as specified in this Court's Orders of June 14, 2010, and July 13, 2010 [Docket Items 29 & 32], consistent with Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District

The accompanying Order will be entered.


**January 28, 2011**                               **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                United States District Judge

---

Courts.  This aspect of the case has been concluded.  A Section 2255 petitioner is entitled to appointment of counsel only if an evidentiary hearing is warranted.  If Mr. Boone believes an evidentiary hearing is warranted on his grounds for relief, he may apply for appointment of counsel; if appropriate, the Court would re-appoint Mr. Catanzaro for the future evidentiary hearing.  Otherwise, Mr. Catanzaro's appointment for present purposes will come to an end on the date thirty (30) days after service of Respondent's answer or other response to the pending petition.  His appointment will continue temporarily so long as a timely application for appointment of counsel is made and pending.